# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **MICHAEL W. CRAFT,** | ) |
| Plaintiff, | ) Case No. 2:10CV00001 |
| v. | ) **OPINION** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,** | ) By: James P. Jones<br>) United States District Judge |
| Defendant. | ) |

*Pamela A. Counts, Lee & Phipps, PC, Wise, Virginia for Plaintiff; Robert Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Michael W. Craft filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits and social security income ("SSI") pursuant to title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A.§ 405(g) and 1383(c)(3).

Craft filed for benefits in June 2007, alleging that he became disabled on June 1, 2004, due to pain in his back and legs, high blood pressure, high blood sugar, shortness of breath, and "blackout spells." (R. at 154.) His claim was denied initially and upon reconsideration. Craft received a video hearing before an administrative law judge ("ALJ"), during which Craft, represented by counsel, and a vocational expert testified. The ALJ denied Crafts' claim and the Social Security Administration's Appeals Council denied his Request for Reconsideration. Craft then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Craft was forty-seven years old when he filed for benefits, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010). Craft left high school at the age of sixteen after completing the ninth grade. He has worked as a truck driver, construction foreman, and a carpenter's helper. Craft stopped working in 2004, when the trucking firm for which he worked "shut down." (R. at 35.) Craft obtained unemployment benefits and shortly after those benefits ended, he applied for

SSI. Craft states that he cannot work due to lower leg pain, black outs, high blood pressure, depression, and anxiety.

Between May 2007 and January 2008, Craft received medical care at Stone Mountain Health Services. In 2007, Craft underwent a series of examinations and tests in order to determine the cause of Craft's back pain, headaches, and dizziness. A June 2007 X ray of Craft's lumbar spine revealed mild degenerative disc disease with ostephytes at the L4 and L5 levels. A central nervous examination of Craft conducted by Paul Augustine, M.D., showed a negative straight-leg raising test and no neurological abnormalities.

During an August 2007 examination, Dr. Augustine concluded that Craft did not have any neurological deficits and that he had mild muscle tenderness in his lumbar spine. An August 2007 MRI showed that Craft had moderate degenerative disc disease at the L5-S1 level, mild degenerative changes at the L4-5 level, and a broad-based disc nuclear protrusion that impinged upon the left S1 nerve root and narrowed the neural foramen. During the fall of 2007, Craft continued to see Dr. Augustine, complaining of back pain, but the physician concluded that Craft did not suffer from any neurological deficits.

During the winter and spring of 2008, Craft regularly returned to Stone Mountain Health Services seeking help for his back pain. Dr. Augustine concluded

Craft did have any neurological abnormalities, but he did diagnose Craft with a "mild-to-moderately positive" straight leg raising test on Craft's left side. (R. at 395.)

At the urging of his attorney, Craft also sought medical assistance at Wise County Behavioral Health Center. Craft was diagnosed with symptoms of depression and began therapy with James Kegley, a counselor, in August 2007. Kegley noted that Craft's mood was mildly depressed. Craft met with Kegley for two appointments and then stopped attending sessions.

In the summer of 2008, Craft's attorney arranged a psychological evaluation conducted by Ralph Ramsden, Ph.D., a licensed clinical psychologist. Dr. Ramsden administered the Wechsler Adult Intelligence Scale Test, the Miller Functional Assessment of Symptoms Test ("M-FAST"), and the Minnesota Multiphasic Personality Inventory test ("MMPI"). IQ tests indicated that Craft fell within the borderline range of intellectual functioning. Craft's MMPI test results were invalid because he exaggerated or faked symptoms or answers. Craft's M-FAST results indicated that he gave an honest self-description of functioning without exaggeration of symptoms. Dr. Ramsden opined that Craft had a mood disorder with major depression that was secondary to general medical problems. Dr. Ramsden also concluded that Craft had a limited ability to deal with the public, deal with work stress, carry out job instructions, and demonstrate reliability.

In November 2008, Craft returned to Kegley for an appointment on two separate occasions. For each visit Kegley noted that Craft's mood was "mildly depressed." (R. at 428, 433.)

After a review of Craft's records, the ALJ determined that Craft had severe impairments of degenerative disc disease of the lumbar spine, hypertension, and mild obesity, which limited the type or frequency of work Craft could perform. The ALJ also concluded that Craft's depression, anxiety, and borderline intellectual functioning did not limit his ability to do work. Therefore, the ALJ determined that Craft was not disabled.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Craft argues that the ALJ's made two erroneous conclusions about the evidence related to his depression and anxiety. First, Craft argues that substantial evidence exists to support the conclusion that Craft suffers from severe mental impairments. Craft asserts that Dr. Ramsden's diagnosis and assessment, supported by the intake evaluations at Wise Behavioral Health Center, provide substantial evidence for Craft's claim of a severe mental impairment. Second, Craft argues that the ALJ erred by failing to fully consider Dr. Ramsden's findings about Craft's mental abilities. I disagree with both assertions.

The ALJ has the exclusive authority to evaluate medical opinions in the record and, when assessing the weight given to a medical opinion, the ALJ should consider whether the opinion is supported by laboratory findings and the record as a whole. 20 C.F.R. § 404.1527 (2010). When considering what weight to give an opinion, an

ALJ must consider the length of a treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship. 20 C.F.R. §§ 404.1527, 416.927 (2010). In addition, the weight given to an opinion by an ALJ may also depend upon whether the opinion is consistent with the record as a whole. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).

Craft's attorney referred him to Dr. Ramsden, who tested and evaluated Craft during a single visit. Some of Craft's test results were invalid due to Craft's over-exaggeration or faking of symptoms. And, Craft appears to have provided Dr. Ramsden with conflicting statements about his mental abilities. For example, despite obtaining a commercial driver's license and a ninth grade education, Craft told Dr. Ramsden he was unable to read portions of the MMPI, which requires an eighth grade education level.

Dr. Ramsden's conclusions conflict with other evidence in the record that indicates Craft did not suffer from major depression. Examples of this include mental health assessments performed on Craft at the Wise County Behavioral Health Center, the therapy notes from Craft's multiple counseling visits with Kegley, and the notes from Craft's treating physician, Dr. Augustine. None of these records demonstrate that Craft exhibited any symptoms of a major mood disorder or disabling depression. In addition, Dr. Ramsden's conclusions conflict with the opinions of a state agency

reviewing psychologist who opined that Craft's depressive and anxiety disorder did not restrict his ability to maintain social functioning, concentration, persistence, or pace.

Thus, substantial evidence exists to support the ALJ's decision to give Dr. Ramsden's opinions little weight.

Dr. Ramsden's evaluation is the only opinion in the record which concludes that Craft suffered from severe mental impairments. Because Dr. Ramsden's opinions are given little weight, no evidence exits to support Craft's assertion that his mental impairments were disabling. Thus, substantial evidence, supports the ALJ's conclusion that Craft's depression and anxiety do not significantly limit his ability to do basic work activities as required by 20 C.F.R. §§ 404.1521(a), 416.921(a) (2010).

Craft's final assertion is that the ALJ erred by concluding that Craft's back and leg problems did not meet or equal the qualifications for a disability under 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04. I disagree.

Dr. Augustine concluded that Craft suffered from a moderate degenerative disc disease and a disc protrusion, which impinged upon his left S1 nerve root. Craft also had a single instance of a "mild to moderate positive straight-leg raising on the left side." (R. at 395.) These disorders partially meet some of the requirements of § 1.04. But the record is devoid of evidence demonstrating that Craft's degenerative disc

disease resulted in sensory or reflex loss or positive tests in both the sitting and supine positions. Thus, Craft's condition fails to meet all of the requirements in § 1.04 and his back problems cannot be considered a disabling disorder of the spine.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

ENTER: September 3, 2010

 /S/ JAMES P. JONES
United States District Judge